Mr. Justice Miller
delivered the opinion of the court:
This is an appeal by plaintiffs below from a judgment of the Court of Claims.
The^ entered into a contract in writing on the 11th day of November, 1848, with the Secretary of the Navy, for the construction of a dry-dock, basin, and railways at Kittery, Maine. The work was done according to minute specifications, and the entire price agreed' to be paid for the work by said contract, namely, seven hundred and thirty-two thousand nine hundred and ffve dollars, was duly paid on the completion of the work.
The present claim for 172,742.82 is the difference in value between felt and tar sheathing and copper sheathing, the latter of which by their contract they were required to put on the dock, and did put it on. '
*114 The claimants do not mate any question that by the terms of the agreement signed by them and by the Secretary of the Navy they were bound to copper sheath the dock, and that this was included in the work which they agreed to do for the aggregate sum already mentioned. Nor do they claim that there was any mistake in reference to that particular, for they protested against that provision of the contract while they signed it.
But the proposition on which the present claim is based seems to be this, when fairly stated: That the act of Congress under which the Secretary acted when he made the contract with them was itself an acceptance of certain proposals made by plaintiffs, and, therefore, taken in connection with those proposals, constituted a contract binding on the Government, and that under that contract the dock was built. That those proposals were framed on the basis of allowing the sum now claimed for copper sheathing, if copper was used.
To ascertain the correctness of this proposition we must look into the history of the transaction previous to the execution of the special contract by the Secretary of the Navy and the plaintiffs.
It appears that in the Act of March 3, 1847, making appropriations for the naval service, certain sums were set apart for floating dry-docks at Philadelphia, at Pensacola, and Kittery, which the Secretary was directed to have built.
Proposals were received for these docks from plaintiffs and others, but upon their examination, and on full consideration of the plans proposed, it was found that the appropriation was insufficient to pay for the work on the plan approved by the Secretary. Thereupon, under the advice of the Attorney-General, the Secretary declined to make any contracts.
The next session of Congress, having considered the matter, passed an Act on the 3d August, 1848, (9 Stat. L., p. 266, § 3,) in, which the Secretary was directed, in the execution of the act already mentioned, to enter into a contract with Dakin and Moody for the construction of a sectional floating dry-dock, basin, and railways at Philadelphia, and with Gilbert & Secor (plaintiffs) for the construction of a balance floating dry-dock, basin, and railways at Pensacola, and with one or the other of the parties for the construction of a floating dry-dock, basin, and railways upon either of those plans, that the Secretary might *115 prefer for tbe navy-yard at Xittery; provided that such contracts could be made at prices that should not exceed by ten per cent, the prices which had been submitted by either of said parties. It was also provided that the Secretary should, in contracting with said parties, enlarge the dimensions of said works at each yard to a capacity sufficient for docking war-steamers of the largest class.
Under the powers conferred by this statute the Secretary of the Navy contracted with Dakin and Moody for the dock at Philadelphia, and with the plaintiffs for the work at Pensacola. In determining which of the proposed plans (both of which it seems were patented) he would select for Xittery, he seems to have considered whether he could get the dock at that place copper sheathed without any additional cost, and it is recited in the contract, signed by him and by plaintiffs, for the work at that place, that “ the Secretary of the Navy, in the execution of the aforesaid law, after mature deliberation thereon, and in consideration that the said parties of the second part will copper-fasten said dock at Xittery, according to the specifications for the Pensacola dock hereto annexed, has determined to select, and does hereby select, the balance-dock, basin, and railways of Gilbert & Secor, parties of the second part, as best adapted for the navy-yard at Xittery.” The contract also provides for the enlargement necessary for war-steamers, and for the increase of the price of the work by ten per cent.
But it seems to us that the statement of the case sufficiently negatives the idea that the act of Congress completed a contract.
When did the claimants become bound to build such a work as that specified in their final contract? That work was much larger than the one for which they made proposals. When did they consent to the enlargement % Their proposals of the year previous had been rejected by the Secretary. When did they renew them ? The proposition which Congress authorized the Secretary to accept was ten per cent, larger than any proposal they had made. Did Congress mean to say we accept your proposal, and give you ten per cent, more than yon have asked ? Or did it mean to' authorize the Secretary to make the best terms he could, not exceeding that limit? Clearly it must have intended the latter.
It also appears from the agreement signed, and therefore ac *116 cepted by tbe claimants, that the Secretary was induced to exercise the option which the act gave him in -regard to the two kinds of works, in favor of that of plaintiffs, in consideration that they would copper-fasten the dock without additional charge. Having thus induced the Secretary to decide in their favor, they are not at liberty to repudiate this part of their contract.
If these transactions are to be construed by the rules which govern agreements between private individuals, there does not appear to be any reason to infer a contract prior to the written agreement between the parties; nor any reason why that agreement should not govern the rights of the parties.
The judgment of the Court of Claims is affirmed.